STATE OF NORTH CAROLINA v. MICHAEL HAWAITHA MARTIN

No. 8921SC254

(Filed 20 March 1990)

**Homicide § 28.3 (NCI3d) — instruction on adequate provocation — no additional instruction on assault required**

In a prosecution for homicide the trial judge's instruction on adequate provocation did not require an additional instruction on assault.

**Am Jur 2d, Homicide §§ 498, 501.**

## STATE v. MARTIN

[97 N.C. App. 604 (1990)]

APPEAL by defendant from judgment of *Judge Thomas W. Ross* entered 29 September 1988 in FORSYTH County Superior Court. Heard in the Court of Appeals 10 October 1989.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Jo Anne Sanford and Assistant Attorney General Karen E. Long, for the State.*

*Appellate Defender Malcolm Ray Hunter, by Assistant Appellate Defender Teresa A. McHugh, for defendant appellant.*

COZORT, Judge.

The defendant was convicted of second-degree murder and of possession of a weapon of mass death and destruction. He was sentenced to sixteen years in prison. On appeal, the defendant contends that the trial judge erred (1) by denying the defendant's request to instruct the jury on the definition of assault, (2) by refusing to defer sentencing, and (3) by abusing his discretion in weighing mitigating and aggravating factors. We find no error.

The State's evidence tended to show that on the afternoon of 2 February 1988, Roscoe Boyd and Ronald Lee went to Lisa Koger's apartment; that the three of them bought a "12-pack of Budweiser" and returned to the apartment; and that, over the course of the evening, various friends of Ms. Koger's came to visit. When defendant Michael Martin arrived about 11:30 p.m., Lisa Koger, Roscoe Boyd, Ronald Lee, and Greg and Donetta Samuels were still present. Shortly after the Samuelses departed, Martin and Boyd became involved in an argument about professional basketball players. Martin walked over to a duffel bag he had brought with him, took out a sawed-off shotgun, and pointed it at Boyd. Ms. Koger, trying to end the argument, took Boyd outside, where she remained. Boyd, however, came back inside and was shot and killed.

Dr. Modesto Scharyj, Medical Examiner for Forsyth County, determined Boyd's approximate height and weight to be five feet and 140 lbs. At death his blood alcohol measured 80 milligram percent, equivalent to a breathalyzer reading of .08.

Lisa Koger testified that Boyd called Martin a "simple-minded motherfucker" and Martin, in turn, "was calling [Boyd] M.F." and threatened to kill him. She testified further that she did not "see any kind of weapon at all on Roscoe Boyd."

Ronald Lee testified that he, too, did not "see Roscoe with any kind of weapon . . . that night." He described Boyd as a small man, weighing between 135 and 140 pounds—"a little bigger than me." Lee testified that neither he nor Boyd tried to prevent Martin from leaving. Lee testified, finally, that he last saw Boyd about "a ruler away" from the shotgun's muzzle but turned away when he "heard Lisa at the door" and at that moment "the gun went off."

Ronald Marrs, tendered as and found to be an expert in firearm and tool mark identification, testified that Boyd's fatal wound was inflicted at a distance "greater than contact [with] but less than four feet from the shirt . . . ." In his opinion, Martin's weapon (a "K-MART 20 guage [sic] sawed-off top rated single barrel shotgun") was not subject to accidental discharge and "would not fire unless the trigger is fully depressed."

In his defense Mr. Martin testified that he bought the shotgun from Bobby Hairston and "intended to sell it and make a profit on it." He showed the gun to his co-workers, and cocked it "when Ernest [Anthony Sides] was looking at it." Martin testified that he "didn't know how to uncock it without shooting it" and that the gun was still cocked when he took it out of his bag and pointed it at Boyd.

The defendant testified further that, when he arrived at Lisa Koger's apartment, Roscoe Boyd was the only person drinking and that he smelled marijuana. Martin and Boyd became involved in a misunderstanding about Michael Jordan and Magic Johnson: "[I]f I expressed my opinion, Roscoe [Boyd], you know, he would try to push it down . . . ." The argument continued over "Magic Johnson and Michael Jord[a]n, Larry Byrd, Superbowl."

The defendant testified that he stood up to leave, took up his bag, but was blocked by Boyd, who said: "You ain't got to leave. If you walk out the door, you might catch a knife in your back." The defendant stated that he then pulled out the shotgun. According to the defendant, he was afraid of Boyd and Lee, and he backed up against the refrigerator. The defendant testified that, while he was pointing the gun at Lee, Boyd lunged at him: "I seen him coming at me and I . . . just turned and jerked and he was shot." The defendant testified that he is six feet, two inches tall and weighed between 150 and 155 pounds at the time of his encounter with Boyd.

The defendant also called in his behalf Ernest Sides, who testified that he examined the shotgun in the parking lot at his workplace but did not fire it "because [the] supervisor was around." Sides testified that he intended to resell the gun to Carlos Gatty of New York City.

The defendant's chief assignment of error is the trial court's refusal to instruct the jury on the definition of assault. The defendant maintains that the court's failure to give such an instruction had the likely effect of misleading the jury. Thus, the defendant contends that if the trial court had "been properly instructed on assault," it might "have determined that Roscoe's actions constituted provocation sufficient to negate malice" and so "returned a verdict of voluntary manslaughter."

During the jury charge conference, the trial judge stated that he would "instruct on first degree [murder], second degree [murder], voluntary [manslaughter], and involuntary [manslaughter] and submit those as alternative verdicts along with not guilty." The judge's instructions to the jury were substantially the same as those appearing in North Carolina Pattern Jury Instructions for Criminal Cases, No. 206.10 ("First degree murder where a deadly weapon is used, covering all lesser included homicide offenses and self-defense.").

After the jury returned but before it began its deliberations, the State requested and the judge gave the following instruction based on Pattern Instruction No. 206.10, footnote 9:

And let me just say that when I was instructing you with respect to voluntary manslaughter, I advised you that voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and without deliberation.

I further instructed you that that [sic] killing is not committed with malice if the defendant acts in the heat of passion upon adequate provocation. And I instruct you, ladies and gentlemen, that words and gestures alone, however insulting, do not constitute adequate provocation when no assault is made or threatened against the defendant.

All right, with those additional instructions, ladies and gentlemen, I will now allow you to return to the jury room
. . . .

Following that final instruction, counsel for the defendant requested the judge "to advise the jury or give them some instruction on what an assault is." The judge replied:

Well, the difficulty I have with that, Mr. Cofer, is that there are multitudes of definitions for different types of asaults [*sic*] and I think it's within common knowledge what an assault is. If you have some language you would like to propose, I'll be glad to consider what it is. But otherwise, I'll deny any request at this time.

The defendant made no further request.

Our Supreme Court has repeatedly "stated that the trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is correct." *State v. Boykin*, 310 N.C. 118, 125, 310 S.E.2d 315, 319 (1984). "Where the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous affords no grounds for reversal." *State v. Jones*, 294 N.C. 642, 653, 243 S.E.2d 118, 125 (1978). Applying those principles to the case below, we hold that the trial judge's instruction on adequate provocation did not require an additional instruction on assault. Taken as a whole the instructions accurately and clearly conveyed the law to the jury.

We note that the instructions discussed at length the elements of each of the possible verdicts. Moreover, the trial judge explained and reiterated the State's burden of proof for the alternative verdicts of second-degree murder and voluntary manslaughter:

Second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation.

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation.

\* \* \* \*

. . . Therefore, in order for you to find the defendant guilty of *murder in the first or second degree, the State must prove beyond a reasonable doubt, among other things, that the defendant did not act in self-defense; or, failing this, that the defendant was the aggressor with the intent to kill or inflict serious bodily harm upon the deceased.*

STATE v. MARTIN

[97 N.C. App. 604 (1990)]

*If the State fails to prove either that the defendant did not act in self-defense or was the aggressor with the intent to kill or inflict serious bodily harm, you may not convict the defendant of either first or second degree murder; but you may convict the defendant of voluntary manslaughter if the State proved that the defendant was simply the aggressor without murderous intent in bringing on the fight in which the deceased was killed or that the defendant used excessive force.*

\* \* \* \*

*. . . In order for you to find the defendant guilty of second degree murder, the State must prove beyond a reasonable doubt that the defendant unlawful, [sic] intentionally and with malice killed the victim with a deadly weapon, thereby proximately causing his death; and that the defendant did not act in self-defense or if the defendant did act in self-defense, that he was the aggressor with the intent to kill or inflict serious bodily harm in bringing on the fight.*

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation or deliberation. A killing is not committed with malice if the defendant acts in the heat of passion upon adequate provocation.

\* \* \* \*

Adequate provocation may consist of anything which has a natural tendency to produce such passion in a person of average mind and disposition and the defendant's act took place so soon after the provocation that the heat — that the passion of a person of average mind and disposition would not have cooled.

*Now, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in the heat of passion upon adequate provocation, but rather that he acted with malice. If the State fails to meet this burden, the defendant can be guilty of no more than voluntary manslaughter.* [Emphasis added.]

The defendant's remaining assignments of error have been examined. We find no abuse of the trial court's discretion in sentencing and reject defendant's second and third assignments of error.

ALPISER v. EAGLE.PONTIAC-GMC-ISUZU

[97 N.C. App. 610 (1990)]

No error.

Judges PHILLIPS and LEWIS concur.